UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:11-CR-37-KSF

UNITED STATES OF AMERICA                                                         PLAINTIFF

vs.                                        **OPINION AND ORDER**

WILLIAM L. BARTLETT                                          DEFENDANT

* * * * * * * *

This matter is before the Court on the motion of Defendant William Bartlett to suppress evidence recovered from his residence on September 10, 2010. For the reasons discussed below, the motion will be denied.

## I.     BACKGROUND

On September 10, 2010, Lexington police were dispatched to a residence in response to a complaint by a neighbor that an intoxicated, disorderly male was yelling and wielding a firearm in the front yard of his residence. When the officers arrived, they discovered the front gate to the residence and the front door were wide open. As they approached, they could smell the strong odor of burning marijuana coming from the residence.

When they approached the front door, they saw a male, later identified as William L. Bartlett, seated in a chair directly inside the door in the front room. The individual appeared to be unconscious and did not respond to the officers' voices. They announced their presence and entered the front door to ensure the safety of the seated male. Within seconds, a second male, later identified as Randy Posey, came through a door from the rear of the home and immediately became loud, aggressive and confrontational toward the officers. The officers physically restrained Posey to conduct a frisk for weapons, but no weapons were found on his person.

Additional officers arrived and conducted a protective sweep of the residence to ensure that no other persons were present. Officers Kloss and Stewart focused on the unconscious person in the chair and finally were able to arouse him. Bartlett became very confrontational and angry and ordered them to leave. Bartlett was given his Miranda warnings; he denied consent to search the house and denied any involvement in narcotics or weapons. The officers observed what looked like crushed pill residue under Bartlett's nose, but he had no response when asked about it. The neighbor who called the police identified Bartlett as the person with the firearm.

The officers then applied for and received a search warrant for the residence. During the search pursuant to the warrant, the officers found numerous pieces of drug paraphernalia, several burnt marijuana roaches and lots of seeds, and a loaded silver and black Beretta Model 21A-22L.R. handgun. The weapon exactly matched the neighbor's description of the gun brandished in the yard by Bartlett. Bartlett seeks to suppress all evidence found in his home on the grounds that the warrantless entry violated the Fourth Amendment and that the search warrant was based on evidence illegally obtained during the initial entry. Bartlett argues that there was no evidence in Officer Stewart's investigative report "that he entered the residence to purportedly render aid to an 'unconscious individual.'" [DE 20, p. 1].

## II. ANALYSIS

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Michigan v. Fisher*, ___ U.S. ___, 130 S.Ct. 546, 548 (2009). The presumption can be overcome, however, if "the exigencies of the situation ... make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." *Id.* The Supreme Court recently reiterated, "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* However, there must be "an objectively reasonable basis for believing ... that a person within the house is in need of immediate aid." *Id.*

Several recent cases illustrate this "emergency aid" exception. In *Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003), the police responded to a 911 call reporting a cutting or stabbing at a residence. When they knocked, Thacker answered the door shirtless, with blood on his legs and boxer shorts. The officers could see that Thacker was bleeding from a cut on his hand. He appeared intoxicated and acted belligerently, using profanity. He offered no explanation for his injury, but demanded assistance from paramedics who were waiting outside for an indication that it was safe to enter. As the door opened, Officer Stack could see a broken beer bottle on the floor, a hole in the kitchen wall several feet off the floor, and liquid spilled on the floor. Thacker's demeanor and attitude indicated that he could have posed a threat to the safety of the officers or paramedics. *Id.* at 254-55. Accordingly, the court held there was no Fourth Amendment violation when the officers entered the residence without a warrant.

In *Michigan v. Fisher*, ___ U.S. ___, 130 S.Ct. 346 (2009), the officers responded to a complaint of a disturbance and were directed to a residence where a man was "going crazy." *Id.* at 547. They arrived to find a household in considerable chaos, a pickup truck in the driveway with its front smashed, damaged fenceposts on the side of the property, and three broken house windows with glass on the ground outside. They noticed blood on the hood of the truck and on the clothes inside. Through a window, they could see Jeremy Fisher inside the house, screaming and throwing things. The back door was locked; a couch blocked the front door. Fisher refused to answer when the officers knocked. They observed a cut on Fisher's hand and asked him whether he needed medical attention. Fisher ignored their questions and profanely demanded that the officers get a search warrant. Officer Goolsby pushed the front door partway open and entered the house, at which point he saw through the window of the open door that Fisher was pointing a long gun at him. The officer withdrew. Fisher was later charged with assault with a dangerous weapon and possession of a firearm during commission of a felony. *Id.* The trial court concluded

that Officer Goolsby violated the Fourth Amendment when he entered Fisher's house and suppressed the evidence obtained as a result. The decision was affirmed in the state courts.

The United States Supreme Court reversed the Michigan courts, saying its decision "is indeed contrary to our Fourth Amendment case law, particularly *Brigham City v. Stuart*, 547 U.S. 398 (2006)...." In *Brigham City*, police responded to a noise complaint in the early morning hours. Approaching the house, they could see an altercation occurring. They followed the noise to the back of the house where they saw a juvenile drinking beer in the backyard and a fight beginning in the kitchen. Through the window, they saw a juvenile break free from the adults restraining him and punch another adult in the face. The adult recoiled to the sink, spitting blood. The court found it "plainly reasonable" for the officers to enter the house and quell the violence. *Fisher*, 130 S.Ct. at 548. Likewise, the court found the officer's entry in *Fisher* objectively reasonable in that Fisher was screaming and throwing things and could have hurt himself or another possible person in the house. *Id.* at 549.

The defense in *Fisher*, like the defense in the present case, argued that the officers "could not have been motivated by a perceived need to provide medical assistance, since they never summoned emergency medical personnel." *Id.* The court rejected this argument saying that, even if it were deemed to establish conclusively that Goolsby did not subjectively believe when he entered the house that Fisher or someone else was seriously injured, "the test ... is not what Goolsby believed, but whether there was 'an objectively reasonable basis for believing' that medical assistance was needed, or persons were in danger." *Id.*

The most recent decision on this subject is *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010). The officers responded to a 911 call at 3:45 p.m. from an anonymous person who claimed to have been talking with Sarah Schreiber, a teenager, when she overheard Sarah's parents yelling and the call was suddenly disconnected. She called back, and James Schreiber hung up the phone. She believed Sarah was "getting beat." *Id.* at 326. Officer Moe arrived at the apartment and could

hear an angry male yelling profanities. Moe knocked on the door, which was answered by a ten-year-old boy. Moe could see James Schreiber yelling at someone in the home. Moe asked the young boy if Sarah was okay. Shortly thereafter, Schreiber came to the door and began shouting profanities at Moe. Moe explained he was there to check on Sarah's welfare, but Schreiber replied with profanities, told Moe Sarah was fine, and asked for a warrant. Moe entered the home before Schreiber could close the door, and Schreiber's wife invited him to come in further. Moe saw Sarah crying and visibly upset, but there were no obvious signs of physical injury. Schreiber continued yelling at Sarah and Moe and threatened to have Moe killed by the "Michigan Militia." *Id.* at 326-27. Moe called for backup and began doing a file check on Schreiber after a second officer arrived, at which point Schreiber became agitated and kept attempting to leave the room. The parties dispute how Schreiber ended up locked on a balcony. When Moe would not open the door, Schreiber used a chair to shatter the balcony door and reentered the house. Moe took Schreiber to the ground and placed him in custody. *Id.* at 327-28.

The court concluded that Moe did not violate Schreiber's Fourth Amendment rights with respect to the warrantless entry. *Id.* at 330. Moe heard a male voice shouting from within the home. When Moe knocked to ask about Sarah's welfare, Schreiber bombarded him with a slew of profanities. "Under such circumstances, a reasonable officer would naturally question why a father, who had just been told that the police suspected his daughter was in danger, would be so hostile and uncooperative." *Id.* Whether or not Moe could see Sarah before he entered the home, Moe had an "'objectively reasonable basis for believing' that Sarah was at risk of imminent injury." *Id.* at 331. While acknowledging the case "lacks some of the more outward manifestations of violence that often support a finding of exigency," the court quoted *Fisher* where it said "[o]fficers do not need ironclad proof of a likely, serious, life-threatening injury to invoke the emergency aid exception." *Id.*

5

In *United States v. Davis*, 565 F. Supp.2d 841 (N.D. Ohio 2008), the court said "the Defendant had a diminished expectation of privacy because his front door was standing open and there was no glass in his storm door." *Id.* at 873. It quoted from *Katz v. United States*, 389 U.S. 346, 351 (1967) as follows: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."

In light of the foregoing authority, this Court concludes that Bartlett's Fourth Amendment rights were not violated when the officers entered his home. They were responding to a complaint by an identified neighbor who saw an intoxicated, disorderly male yelling and wielding a firearm in the front yard. The front door of the residence was wide open and there was a strong odor of burnt marijuana coming from the home. A male seated in a chair directly inside the door, where he was visible upon approach, appeared to be unconscious and did not respond to the officers. Because of the prior indication of firearm involvement, the officers invoked the emergency aid exception, announced themselves, and entered through the open front door. When the officers entered, they were confronted by another male in the home who immediately became loud and aggressive toward the officers. He was restrained for a weapons search, and other officers conducted a protective sweep of the residence. When Officers Stewart and Kloss were finally able to get Mr. Bartlett's attention, Bartlett began screaming profanities and demanded a search warrant. The officers observed crushed pill residue under his nose, and received no response to their inquiries about it. The neighbor confirmed that the person with the firearm was Bartlett. Because of the strong smell of marijuana, the pill residue on Bartlett's nose, and the involvement of a firearm, the officers secured the residence and the two males and obtained a search warrant. Because there was no Fourth Amendment violation with the initial entry into the residence, the evidence obtained with the search warrant is not "poisonous fruit."

Bartlett's claim that there was no evidence in Officer Stewart's investigative report "that he entered the residence to purportedly render aid to an unconscious individual" is flatly refuted by the

6

record. Officer Stewart not only sets forth the details about the open door, the unconscious Bartlett in a chair, and the prior report of involvement of a firearm, but also cites specifically to the "emergency aid exception provided by Michigan v. Fisher." Bartlett's motion to suppress will be denied.

III. CONCLUSION

**IT IS ORDERED** that Defendant's motion to suppress evidence [DE 20] is **DENIED**.

This December 16, 2011.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge